[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF THE CASE
The petitioner in this habeas corpus proceeding claims that he was the victim of ineffective assistance of counsel. Convicted and sentenced to a total effective sentence of 15 years, he alleges that throughout his trial he was under the influence of drugs and was often asleep. He also alleges his attorney at trial was aware of these facts but did not disclose them until the sentencing hearing.
Thus, the petitioner urges, had these facts been known during the trial, it would not have gone forward. He claims violations of the Connecticut and United states Constitutions in that he was "not present" at his trial as he was incompetent to stand trial and was denied effective assistance of counsel.
The respondent has interposed the defense that the petitioner CT Page 10995 is precluded from raising the incompetency issue in this habeas corpus proceedings.
In his brief, the respondent notes the issue was neither raised at trial nor on the direct appeal. And, when pleaded in the respondent's return, it was not denied or otherwise addressed.
Section 23-31 of the Practice Book requires that a petition "allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default."
While there is merit to this argument, in view of the fact that the petitioner has presented and briefed his claim as a display of ineffective assistance of counsel, the court will address it as such.
 DISCUSSION I
The petitioner presented three witnesses in addition to himself to support his contention. His defense counsel was also called.
The trial in question was held in November and December of 1994 and one of the petitioner's witnesses, now 15 years of age, stated she testified at the trial and saw the petitioner nodding as his head went down and he fell asleep. She did not recall who called her to testify at the trial and did not remember the lawyer who sat next to the petitioner at trial.
The petitioner's ex-girlfriend testified that she was present at the trial and that she and the petitioner were "heavily" into drugs during the time of the trial. They would get heroin before court and at lunch time. She never told counsel this but "it was obvious." She described no specific effects on the petitioner of this alleged usage.
The petitioner's mother who is employed in the court system as a court transcribing monitor testified that she had difficulty getting him up in the morning to go to his trial. "His eyes would close." She two stated it was obvious the petitioner was under the influence. However, she never discussed this with his lawyer CT Page 10996 and never saw him ingest drugs.
Defense counsel's testimony was not consistent with the petitioner's allegations. She claimed to have learned of the petitioner's drug habit at sentencing when his parents told her and gave her a note from the petitioner in which he stated he would not appear for sentencing and suggested he was in a program. Recalling that on two occasions during trial, she had seen the petitioner doze off (he awoke at once to her nudges), she so advised the sentencing judge and stated her opinion that he was an addict. The note she received also influenced that opinion.
However, she also testified that the petitioner displayed no symptoms of addiction in the course of her representation of him. The petitioner had spoken disparagingly of addicts. He was awake throughout voir dire and was active at trial, making suggestions, suggesting questions and otherwise behaving as though he was very aware of what was going on. The petitioner's parents never expressed any concern, nor did they speak to her about addiction.
The petitioner also called Dr. Donald Grayson who first examined him for drug evaluation on February 20, 1996. The doctor had no knowledge of the petitioner's condition from November 1994 to December 1994. However, from an examination of the petitioner's medical records and assuming the truth of the petitioner's history of drug problems, the doctor was of the opinion that he was a drug dependent person during November and December of 1994.
The petitioner testified on three occasions in the course of the criminal prosecution he addresses in this case. His testimony covered over 100 transcript pages in toto.
Dr. Grayson was asked to read these transcripts with an eye toward rendering an opinion as to the petitioner's condition at those times. The doctor concluded that Mr. Henderson was alert and expressed himself in an articulate fashion. He displayed good recall of times, dates, people and his actions.
An examination of the trial transcript also reveals occasions when the petitioner spoke out during proceedings and when his counsel asked for the court's indulgence because her client was speaking to her. On one occasion, he was warned by the trial judge for gesturing to his witness. (See appendix attached). CT Page 10997
A crucial element in evaluating this petitioner's claim is, of course, his own credibility. His explanation of his mental condition is directly contradicted by his defense counsel, the transcripts of his testimony, and his own witness, Dr. Grayson.
A particular portion of his testimony was the result of a claim alertly raised by defense counsel when the petitioner related to her that some of his trial jurors saw him being handcuffed and photographed. The episode occurred on a Friday, and after the weekend recess, the petitioner was able to recall and relate in detail what had transpired on the previous Friday.
As for the petitioner's credibility, the court has read his trial testimony, including the cross examination. It is the court's conclusion that he is not trustworthy and has been a liar and a deceiver for most of his adult life. The court does not believe his testimony that he was "out of it" throughout his trial.
The court will not comment on the testimony of the remaining witnesses, who where offered to support the petitioner's version of his trial behavior, save to say one can understand their misguided sense of loyalty.
For the above noted reasons, the court concludes the petitioner has failed to meet his burden of proof and the petition is denied.
 II
The allegation of ineffective assistance merits comment, as having read the entire trial transcript, the court was impressed with the diligence, performance, and patience of trial counsel.
In his brief, the petitioner narrows this allegation to consist of the failure to advise the court of the petitioner's state of incompetency to stand trial.
Trial counsel indicated in her testimony that only the petitioner's note, received on the day of sentencing, alerted her to a possible drug conviction. At no time did either his girlfriend, or any other witness even suggest to counsel what they now urge the court to find. CT Page 10998
Only the few episodes when he dozed off after lunch can even suggest incompetence. And, as the court noted above, and the respondent's brief recites in detail, (see pages 9-14). the petitioner's behavior, participation, and the content of his testimony strongly negates any reasonable conclusion in favor of this claim.
There is no basis to charge counsel with ineffective assistance under these circumstances. Lacking such a finding, the first prong of the two tests required to prevail on a habeas corpus petition has not been met.
 III
While the conclusions reached above are dispositive of the issue presented by this case, the court would also note that the petitioner has failed to meet its burden as the second requirement in order to prevail on a habeas corpus petition.
This is the requirement that the petitioner show that as a result of the alleged action or inaction he was prejudiced in some way.
He was not prevented from testifying in his own behalf. There was no showing that the case would have proceeded differently or ended in his favor had he not been "under the influence," as he alleges. The petitioner's suggestion that the trial would not have proceeded had his condition been known does not lead to the conclusion that ultimately the charges would have gone away and he would never be punished.
 IV
After trial and upon the filing of the petitioner's brief, the respondent filed an objection to the brief. The objection was that for the first time in this proceeding, the petitioner stated that he trial court "was sufficiently on notice to potential problems with the petitioner's mental state so as to trigger a mandatory inquiry by the court."
At the hearing in this objection, the petitioner stated his position to be that when defense counsel related to the court that the petitioner was absent for sentencing and related the contents of this note, "this should have alerted the court." When pressed by this court, the petitioner's response was that the CT Page 10999 court was on notice and didn't inquire.
It could well have occurred to the trial judge that this absence was an attempt to stall for time or to flee the jurisdiction. Having sat through the trial and observed the petitioner in his roles of observer and witness, he had an opportunity to reach any number of conclusions.
This court cannot speculate or conjecture as to what prompted the trial judge to act or not act.
In view of the court's conclusions recited above, such factors are irrelevant in any event.
 CONCLUSION
Judgment may enter for the respondent the petition is denied.
Anthony V. De Mayo, Judge Trial Referee
 APPENDIX
Transcript citations reflecting petitioner's participation, etc.:
Vol. I
Page 114 — Witness notes petitioner writing down his name and address. Petitioner speaks up.
 177 — Petitioner approaches witness and is admonished by the court.
180 — He addresses the court.
 181 — On Motion to Recuse, tells counsel about prior trial and judge.
Vol. II
Page 355 — Apologizes for returning late from lunch.
372 — He objects; court says "No, No," he says "Yes."
398 — Prosecutor complains of "head motions" by Henderson. CT Page 11000 Court cautions him about commenting. He apologizes, court addresses objections, he responds.
 406 — Asks if he can hug his brother — "I haven't seen him in 9 months."
408 — Thanks court.
412 — Petitioner: "Have a good Thanksgiving."
Vol. III
Page 452 — Interrupts with explanation of witnesses being absent.
462 — Speaks up, commenting an answer of witness.
 557 — Counsel takes recess to speak to client after rebuttal.
 560 — Court addresses petitioner on his decision to testify on rebuttal.
 564 — Testifies in detail about prior Friday and jurors observing him in cuffs.
Vol. IV
Page 44 — Defense counsel: "My client is speaking to me while I'm trying to speak."
Vol. V
Page 31 — Hand signals from petitioner to witness; "I said I would like to speak to her" — admonished by court.
33 — Petitioner interrupts, admonished.
 35 — Court asks if he wishes to testify, canvassed by court. Testifies: page 37-133.
101 — Says he communicated closely with his counsel.